First case this morning is case number 4110518 Lambert v. Coonrod for the appellant Byron Sims for the apple lead, Dominic Seymour. Mr. Sims. Good morning. May it please the court. I am Byron Sims. I'm here on behalf of the appellants Richard and Billy Joe Lambert. I'm with Cast and Rule Sims and Bell and Law Offices in Carlinville, Illinois. This was an action initially brought to recover damages for injuries sustained by Mr. Lambert in a fall from a wire spool in a shed owned by the defendant Tim Coonrod. At the time of the fall, Mr. Lambert was attempting to assist Mr. Coonrod in removing some Halloween decorations from a shelf in the shed which was approximately six feet from the floor. Following trial, a verdict was rendered in favor of the defendant. During the course of the trial, plaintiffs believed that the court made two evidentiary rulings which were inerrant. It was from these rulings which plaintiffs appealed. The first of these rulings was the court's refusal to admit into evidence certain statements made by the defendant Tim Coonrod to the plaintiff, Billy Joe Lambert, shortly after the accident. During this conversation, Mr. Coonrod told Mrs. Lambert the following, and this is according to an offer of proof tendered by plaintiffs during trial outside of the presence of the Mr. Coonrod told Mrs. Lambert he was very sorry that the accident happened and that he promised that the Lamberts would have nothing to worry about and that he would, they would not have to pay a dime of any expenses occasioned by the accident. In excluding the evidence of this statement, the court relied on 735 ILCS 5-8-1901 which provides that payment for medical, surgical, hospital, rehabilitation, equipment or expenses by or on behalf of any person or the offer to provide or pay for such shall not be construed as an admission of liability and testimony with respect to the foregoing shall not be admissible in evidence as an admission of liability against any person. And it's important to note that during that conversation at no point in time did Mr. Coonrod use the phrase medical expenses or in any way refer to medical expenses when that statement was made. The court may also have relied on Illinois Rule of Evidence 409 which went into effect on January 1st, 2011. The language in Illinois Rule of Evidence 409 is similar but not identical. It provides evidence of furnishing or offering or promising to pay medical, hospital or similar expenses occasioned by an injury is not admissible to prove liability for the injury. I think the appellee interprets Illinois Rule of Evidence 409 almost as an expansion of the statute by including the phrase or similar expenses. We would take issue with that interpretation. We don't believe the Illinois Rules of Evidence can be interpreted as an expansion of existing law. If you review the committee commentary when the Illinois Rules were formulated, the purpose of it was simply codification and consolidation of existing evidence law in a concise and convenient to use and access format. Assuming you're correct, why isn't Section 8-1901B sufficient to bar the statements that you say should have been admitted? Well, I think the importance is to realize that common law in Illinois, these types of offers of payment of medical expenses were deemed admissible. So when the statute was enacted, it was enacted in derogation of common law. And there are certain well-recognized principles that when that happens, these types of statutes are strictly construed to only give effect to their precise meaning. In other words, the puzzle piece has to fit precisely in order to act in derogation of common law. And to exclude evidence that does not fit within the precise definition of the statute is taking the construction too far. The legislature, if it chose to, could simply have put in the statute that an offer to pay any expense should be excluded. But they did not do so. They chose, by their express terms, to limit this to payment of medical expenses. So you think the legislature intended to bar evidence of an offer to pay hospital, medical, and similar expenses as a statement to prove liability for an injury, but evidence of furnishing other payments connected with the same injury in the same context? That was not part of it? That's my belief, yes. What about the idea that we should try to divine legislative intent and construe statutes accordingly? Why would the legislature draw that distinction? Well, I think the purpose of the statute was not to discourage people from rendering aid to injured persons. I don't think the purpose of the statute was to supersede common law in terms of actions which are inconsistent with the position taken by a party at trial or which were an admission against their interest or an admission of liability. So when you're not talking about rendering medical aid to someone who's injured, the public policy that the statute was intending to remedy doesn't apply. Well, if we apply your reasoning strictly, then there's going to be a disincentive to supplying any kind of aid. Your lawyer's going to tell you if anything like this ever happens, don't offer to help the guy because that's going to be an admission. Well, I think, again, the offer needs to be expressed as to what you're offering. So if you're going to help the guy, you need to be very, very careful about what you say. But that seems contrary to the purpose of the statute. As you say, the purpose is to encourage people to help people that have been injured. It's like with the insurance. You have medical pay coverage. Med pay pays for anybody in the car regardless of fall. Well, I think the difference in this instance is the fact that common law was different. And this is a statute which is essentially reversing common law. And when that's the precisely within the puzzle. And that if it's vague or it's unclear, the court should err on the side of admitting the evidence, not err on the side of keeping out the evidence. Are you contesting that Rule 409 applies to this case? I think it's irrelevant whether it applies because the statute's in existence anyway. Does it apply or not? I think the rule is intended and should be interpreted as consistent with the statute. And clearly the statute does apply. Well, does that answer my question? I think the rule applies, yes. The rule also begins in addition to the provisions of Section 8-1901. What does that mean? Well, I know that it says that. But also if you read the committee commentary, the committee commentary expressly says that these are not intended as a substitute for existing statutes but merely as an organization of existing evidentiary law from all sources. But the only real difference is the phrase, or similar expenses, isn't it? I believe so, yes. That would fit with the introductory clause in addition, wouldn't it? It depends on how you interpret the word similar. Do you interpret that as being medical-related expenses that are similar to the ones that are outlined there? Or do you interpret that to take it in the direction of other non-medical-related expenses? Why would the legislature draw such a distinction? Why would the legislature say the reasons, as this book indicated, we think it's a bad idea to have someone say, I'm going to take care of expenses, constitute or be admissible as an admission of liability, but only insofar as it refers to medical expenses, not ancillary expenses? Why would they draw that distinction? The only answer I can provide is what the research says and what's the stated policy behind that was to not discourage the rendering of medical aid. The purpose wasn't to cover other kinds of aid. Aid for payment of other out-of-pocket expenses or lost wages was not intended to be covered by the statute. We've cited in our brief the Mick cases, the Sullivan case and the Hamlin case, which are all simply intended to set out the state of the common law before the statute was enacted, meaning that offers to pay medical bills, surgical expenses, in each of those cases they were all admissible at trial as an admission against interest and as a potential admission of liability. The last and the second error which plaintiffs complain of, which is the subject of the appeal, is the court's admission of certain photographs depicting the interior of the shed, which were admitted into evidence. We believe that the photographs were not material. In other words, the layout of the shed itself was not significant or needed to be important for the jury to comprehend. It wasn't important to the jury where the door was. It wasn't important to the jury what the shed was made of. The only issue was the shelf and how the plaintiff gained access to it. Also, these photographs were not accurate. They were taken many months after the accident. They did not depict the shed in the same condition that it was at the time of the accident, and they depicted contents and items in the shed which were not there at the time of the accident. And also, we believe that these photographs were prejudicial in that the photographs depicted a ladder prominently and displayed in the photographs and conveniently located in the photographs in an area which the parties could have accessed. And that ladder was not there at the time of the accident. We believe that that photograph was prejudicial. Well, the jury knew that. The jury was told the ladder was not there. The jury was told the ladder was not there. But it's our position that you can't... A picture is worth a thousand words, as they say. We don't believe that that statement in and of itself can undo the prejudicial effect of those photographs. Is this a discretionary call by the trial judge? It is a discretionary call by the trial judge, only to be overturned based upon an abuse of discretion. So we'd have to conclude that no reasonable person could find that the admission of this photograph was not prejudicial? That's correct. And we believe, because of the prejudicial effect and the fact that the prejudice is outweighed by any benefit that the jury could have received from these photographs, that the court erred in admitting them into evidence. Counsel, I had one question. I understood your argument, or at least part of your argument, to be that Rule 409 did not apply, but because it became effective after the cause of action accrued. In response to Justice Steinman, however, you indicated that it does apply. So are you abandoning that argument, or did I misconstrue it? We did make that argument at trial. We believe, at first blush, that the rule of evidence appeared to expand that which the statute provided. Again, in doing the research after the appeal, we discovered in the committee commentary which seemed to indicate that it wasn't intended to expand the law, but merely to codify and organize existing law. Our argument today is based on that interpretation of what the rule is meant to do. Okay, thank you. We'll have rebuttal. Counsel? May it please the Court, Counsel? My name is Dominique Seymour, and I'm here on behalf of the defendant, Appellee Tim Coonrod, in this case. We believe that the trial court properly exercised its discretion in this case, both in granting the defendant's motion in limine to bar the proper testimony by the plaintiff, and also in including the photographs that were offered by the defendant in evidence. Furthermore, the trial court was called upon in the post-trial case to order a new trial, and in doing so, the court was called upon to determine whether or not the verdicts were against the manifest weight of the evidence. And the trial court properly exercised its discretion and found that, in fact, the verdicts were not against the manifest weight of the evidence, and therefore denied the motion for a new trial. With regard to the proper testimony of the alleged statement made by my client of the offer to pay expenses, the plaintiff sought to use this for the very purpose that is discussed in both the statute and Rule 409 of the Illinois Rules of Evidence. In this case, I think that the context in which the statement was made also has to be considered, because plaintiffs are arguing that this very narrow interpretation must be applied in the absence of an express statement that you're offering to pay medical hospital expenses that the statute or the Rule of Evidence doesn't apply. But in this situation, the testimony of Billy Lambert, in her offer of proof, was that the statement was allegedly made at the hospital in Carlinville, Illinois, essentially immediately after this occurrence. And at that time, if Mr. Coonrod, in fact, had made this statement, the only expenses he could have even contemplated at that time would be medical expenses. Also in the offer of proof, the plaintiff's counsel asked Ms. Lambert what she understood Mr. Coonrod's statement to mean, and she said that she understood it to mean that he would pay for anything that they had trouble with. But this statement is, in fact, contradicted by her pre-court deposition testimony. Whenever I asked her what she understood expenses to mean, she specifically said hospital or ambulance. So it's clear that in the context of the statement, even though Mr. Coonrod might not have said, I'll pay your hospital expenses, I'll pay your medical expenses, certainly the only expenses that could have been contemplated at that time would have been hospital or medical expenses. To require a party who's involved in a situation like this to expressly state, I'm talking only about hospital, I'm talking only about medical expenses, would virtually make the statute, I think, impossible to apply. Well, what would have happened had he said at the hospital? And, you know, if he misses a couple weeks' work, I'll cover that too. Well, Your Honor, I actually believe that the Illinois Rule of Evidence 409 probably encompasses lost wages, because, again, as you pointed out, the rule does say in addition to those items provided for in the statute, Section 819.01, but it also covers that additional language, any similar expenses occasioned by an injury. Certainly lost wages that were incurred because a party had to be off work because of a specific injury, I think, would fall under the purview of similar expenses. So similar expenses does not mean expenses similar to medical and hospital expenses? Well, I think not specifically. I mean, I don't think it's referring to doctor or physical therapist. I think it could encompass things such as lost wages. Does it include similar expenses occasioned by the injury, such as lost wages, or what about ambulance bills or subsequent doctor visits? I think doctor visits, ambulance bills would be... Lost wages, you're not sure? No, I believe lost wages would be covered. I'm sorry if I didn't make that clear. I think that certainly in the context of a personal injury action, if there are lost wages that are incurred because of an injury, I mean, certainly those are expenses occasioned by the injury that a party is entitled to recover. The statement at issue here was he would take care of expenses? I believe the statement, as she put it, was that he would... She said, he said, I would take care of everything. We wouldn't have to pay a dime of the expenses. Do we need to... Did the trial court address or do we need to address the scope of the similar expenses language in Rule 409 for you to win? No, Your Honor. I believe that the statement is covered by the statute, which was certainly in effect, and covers it in any event. But I think the rule also would cover lost wages. But the fact of the matter is, at the time that the statement was made, there was no indication, there's nothing in the record suggesting even in the extent of the injuries at that time, or whether Mr. Coonrod was even going to have any expenses beyond medical expenses. This is certainly a situation where if you made the statement, it could have only been contemplating the medical expenses, and I think that that's apparent by the fact that Ms. Lambert admitted when I asked her, that she understood that to mean hospital or ambulance bill expenses. So what was the argument at trial? The plaintiff argued that this might have... Essentially the same argument here in this statement of Mr. Coonrod. Was there Coonrod, I might have referred to lost wages because of the injury, and that wouldn't have been excluded by the statute? The argument at trial, from what I recall in the record, was simply that because he didn't limit it to medical expenses, and in the offer of proof, Ms. Lambert was asked what she understood that to mean, and in that point she said anything in general that we needed help with. The court... I guess that would be lost wages. Well, I don't know that lost wages was specifically mentioned at the time. Was it argued by counsel that that's what it should mean? In other words, the whole lost wages thing, this isn't the first time it's coming up, or is it? I don't remember, Your Honor. There's nothing in the record about lost wages as far as the argument on the motion to eliminate. We believe that when you consider the where and the when that the statement was made, as well as Ms. Lambert's admission as to what she understood the statement to mean whenever I first asked her, that certainly this falls within the purview of both the statute that was certainly in effect and the newly adopted rule of evidence 409. In addition to this, the court did allow Ms. Lambert to testify to the additional part of the conversation wherein Mr. Coonrod allegedly said that he was very sorry that the accident happened and he was apologetic. They were allowed to bring that evidence out. Certainly, I think that they argued, if I recall correctly, they argued that that could be an admission. So the judge didn't make this over-broad barring of the conversation in its entirety, just the fact that the limit of the offer to pay the expenses. And we believe that the court did not abuse its discretion or properly exercise its discretion in ruling on that motion to eliminate. With regard to the photographs, the plaintiff's argument completely ignores the fact that the changes in the conditions between the photographs that were taken and the day of the occurrence, which in this case is specifically with regard to a ladder that was depicted in the photographs. That was abundantly and overly explained to the jury that that ladder was in fact not there on the day of the occurrence. Why did they have to have the ladder there? Why didn't they move the ladder out of the garage before they took the photographs? Your Honor, in hindsight, that is certainly what we should have done. It didn't occur to me that at the time that I actually took the photographs with my client there in order to get an understanding of how the shed was laid out, because I didn't understand it when I was talking to my client initially. I was trying to take a picture of the wire spool that was in the shed as well. Quite frankly, Your Honor, it didn't occur to me, and I didn't even notice that the ladder was there until it was raised by the plaintiff's attorneys at the time of the trial. The photographs were offered, and there was testimony about how the shed was laid out. Personally, I thought it was a little confusing in talking to my client until I went and saw the shed. The photographs, the judge had the opportunity to hear the testimony. He saw the photographs, and he admitted them for the limited purpose of allowing the jury to understand how the shed was laid out, where these shelves were, where Mr. Lambert would have been in relation to these shelves. Not only did Mr. Coonrod testify in direct examination that the ladder was not there, he testified that the ladder was purchased afterwards. The statement was reiterated across examination that, in fact, the ladder was not there. No one ever suggested to the jury that there was a ladder there. The testimony by both Mr. Lambert and Mr. Coonrod was, in fact, there was no ladder there. And certainly, there was never any argument on behalf of the defendant that there was a ladder there that he should have grabbed and used. Instead, even plaintiffs argued in their closing argument that the ladder was purchased because of the occurrence. So it was very clear to the jury that this ladder was not there. Your Honor, you're absolutely right. We should have removed the ladder whenever we took the photographs. In hindsight, that was something I should have done. I didn't do that. But certainly, there was no question, I don't think there was any question in the jury's mind, but that there was no ladder present on that day. It's interesting. It's a matter addressed to the discretion of the trial court, and I share the same concerns expressed by Justice Cook. And I've been the trial judge. I've never said that I understand it was bought afterwards. I understand and tell the jury that, but I'm not going to allow it. I don't think it was necessarily the error for the trial court to differ, but as a matter of, and thank you for your candor, counsel, as a matter of practice, you have to be alert to these things when you're having these photos taken because to the extent it would have been helpful, the jury simply would have been deprived had I been the trial judge of ever seeing the picture. And certainly, Your Honor, that is a lesson I have learned the hard way now at this point. But again, I think to suggest that the jury would have taken those photos and taken the information from those photos back and said, well, there was a ladder hanging on that wall, and that wasn't negligent of Mr. Cunard because there was a ladder hanging there, I think that that's an insult to the jury's intelligence to think that they did that. There's certainly no reason to believe that they couldn't understand, one, the limited purpose that they were told to consider the photographs for, and also that, in fact, there wasn't a ladder there. And certainly Judge Londrigan had the opportunity to hear the testimony, to see the photographs, and he believed that it was appropriate to admit those, and we believe that he did not abuse his discretion in doing so. With regard to the motion for a new trial, I would like to point out that Judge Londrigan did and was called upon to assess whether or not the verdicts were against the manifest weight of the evidence. And in this case, what we have is a general verdict, or general verdicts, if you will, for the defendant and against the plaintiff. We raised the issue of Mr. Cunard's contributory negligence as a defense in the case. There was certainly plenty of evidence on his contributory negligence in that he knew this was a wire, an empty wire spool that wasn't designed to be stood on. He didn't make any effort to test the stability of the wire spool. There was also conflicting testimony about whether Mr. Lambert testified that Mr. Cunard had stood up on the wire spool. Mr. Cunard denied that. So there was conflicting testimony, and the jury had to assess the credibility, hear the testimony, and decide what happened. We don't know from the general verdicts whether the jury determined that Mr. Cunard was not negligent or whether they determined that Mr. Cunard was negligent, but in fact Mr. Lambert's contributory negligence constituted more than 50% of the approximate cause. Did the plaintiff ask for a special interrogatory? They did not, Your Honor. And because of that, there's certainly no way to know exactly what the jury's finding was based upon. And in the failure to ask for a special interrogatory in that regard, there's a presumption that the jury found in favor of the defendant on all of the defenses raised, in this case the defense of contributory negligence, and certainly the evidence supported that. So in this case, the jury's verdict was amply supported by the evidence. It was not against the manifest rate of the evidence, and the trial court did not err in denying the motion for new trial. And for those reasons, we respectfully request that this court affirm Judge Lonergan and his rulings. Thank you. Thank you. Rebo, please. Thank you. Let me briefly address the contextual argument made by the defendant's attorney. It was asserted that because this conversation took place at the hospital, therefore it necessarily had to only be talking about medical expenses. If Mr. Coonrod wanted to speak to Mr. Lambert after the accident, he would have had to go to the hospital because that's where she was. I don't think you can draw any more conclusions from it other than that's simply where the conversation took place because that's where the parties were. Mr. Lambert was argued that he didn't know at that point what other expenses there could have been. No one knew. Didn't know if he was injured at that point. Didn't know if he would be off work for a year, two years. I don't think the context of where the conversation took place is or should be significant at all in weighing whether that evidence should have been admissible or not. The question was raised as to whether we brought up the lost wages issue at trial. I can't recall whether it was raised during the offer of proof, but certainly during arguing the motions and limiting. I specifically recall that it was addressed with the court during those arguments. And in terms of the verdict being against the manifest weight of the evidence, we did not make that argument. We weren't making that argument in the appeal. Based on the evidence that the jury received, we knew that this was going to be a close case. Our argument is with the evidence that the jury received and should not have received and the evidence that the jury never did receive, which we believe they should have. We believe if the evidence tendered to the jury were different, the result would likely have been different as well. Thank you for your time. Thank you. Thanks to both of you. The case is submitted. The court stands in recess.